IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

**MONABIRDA BASSA,**

        **Plaintiff,**

**v.**                                                                            **Case 2:22-cv-02116 MSN-cgc**

**ALLIANCE HEALTHCARE
SERVICES,**

        **Defendant.**

**REPORT AND RECOMMENDATION ON ALLIANCE HEALTHCARE SERVICES'
MOTION FOR SUMMARY JUDGMENT AND MONABIRDA BASSA'S CROSS-
MOTION FOR SUMMARY JUDGMENT**

**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE RESPONSE AS
CROSS-MOTION FOR SUMMARY JUDGMENT**

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE OUT OF TIME**

Before the Court are the following motions: Defendant Alliance Healthcare Services' ("AHS") Motion for Summary Judgment (Docket Entry ("D.E.") #26) ("AHS's Motion for Summary Judgment"); Plaintiff Monabirda Bassa's "Cross-Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment" ("Plaintiff's Cross-Motion for Summary Judgment") (D.E. #28); Plaintiff's "Motion for Leave to File Response as Cross-Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment" (D.E. #31) ("Plaintiff's Motion for Leave to File Cross-Motion"); and, Plaintiff's "Motion for Leave to File Out of Time" (D.E. #32) ("Plaintiff's Motion for Leave to File Response").

For the reasons set forth herein, it is RECOMMENDED that AHS's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED as untimely. It is further recommended that Plaintiff's Motion for Leave to File Cross-Motion be DENIED and that Plaintiff's Motion for Leave to File Response be GRANTED.

## I.  Background

On February 23, 2022, Plaintiff filed a *pro se* Complaint alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112, *et seq*. (D.E. #1). Plaintiff alleges that she suffers from anxiety disorder and PTSD, that AHS refused to provide a reasonable accommodation for her disability, and that her employment with AHS was unlawfully terminated on the basis of disability.

On October 26, 2023, AHS filed its Motion for Summary Judgment. (D.E. #26, #27, #36). First, AHS argues that Plaintiff cannot establish that she is disabled as defined by the ADA. Second, AHS argues that, even if Plaintiff could establish that she is disabled, Plaintiff's proposed accommodation was not reasonable because it would have required the elimination of an essential function of her job—namely, occasionally covering the front desk.

On November 28, 2023, Plaintiff filed a Cross-Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment. (D.E. #28). On December 12, 2023, AHS filed its Reply (D.E. #30), which asserts that Plaintiff's Cross-Motion and Response are both untimely. Specifically, AHS asserts that Plaintiff's Cross-Motion was filed more than a month after the October 26, 2023 dispositive-motion deadline passed. (*See* D.E. #25). Further, AHS argues that Plaintiff's Response was due by November 24, 2023 and must not be considered pursuant to Local Rule 56.1(d).

2

On December 26, 2023, Plaintiff filed two motions. First, she filed a Motion for Leave to File Cross-Motion. Therein, Plaintiff asserts that the Court should consider her untimely cross-motion because she had not believed it to be appropriate to file such a motion at an earlier date. Second, she filed her Motion for Leave to File Response, which argues that the deadline for her to respond to AHS's Motion for Summary Judgment was actually November 27, 2023, as this Court's Clerk's Office was closed on November 23, 2023 and November 24, 2023 for the Thanksgiving holiday. Plaintiff states that she contacted this Court's Clerk's Office on November 27, 2023 to inquire how late it was open. Plaintiff states that she was informed that she could access a "dropbox" until 6:00 p.m. Plaintiff states that she came to the courthouse before that time and "found the building locked and the dropbox inaccessible." Plaintiff states that she returned to file it the following day. Thus, she argues that her untimely Response was due to excusable neglect and should be permitted by the Court.[1]

On January 9, 2024, AHS filed its Response to both of these motions. (D.E. #34). AHS asserts that Plaintiff deliberately elected not to file a dispositive motion within the appropriate time period and, thus, her request that the Court consider it should be denied. AHS further incorporates by reference the arguments made in its Reply as to the untimeliness of her Response.

## II.     Proposed Findings of Fact

### a. *Plaintiff's Employment with AHS*

In 1988, AHS began employing Plaintiff as a General Office Clerk. (Affidavit of Brenda

---

[1] Also on December 26, 2023, Plaintiff filed a "Reply to Defendant's Response to Plaintiff's Statement of Additional Material Facts," which is, in effect, a Sur-Reply. (D.E. #33). This filing is not permitted by Local Rule 56.1. Accordingly, it has not been considered for purposes of this Report and Recommendation.

3

Grant ("Grant Aff.") ¶ 3). In this position, Plaintiff performed receptionist and record-clerk duties. (*Id*.) In 1995, she was promoted to Office Manager at the Orange Mound location. (*Id*.) She became an Administrative Support Supervisor in 2000. (*Id*.) As part of her duties as an Administrative Support Supervisor, she managed the receptionists at three locations. (*Id.* ¶ 4). This included making hiring recommendations and training these individuals. (*Id*.)

In 2019, she was made an Administrative Assistant in charge of supplies for all six clinic locations while working out of the Peabody location. (*Id*. ¶ 3). Following significant growth at the clinics, AHS determined that the needs of the respective clinics would be better served with each having an on-site Clinic Assistant ordering supplies. (*Id*. ¶ 5). Consequently, Plaintiff's position of Administrative Assistant was eliminated on or about June 16, 2020. (*Id*.) The only other position within AHS that Plaintiff was qualified to hold was that of Clinic Assistant, as she did not have any of the required degrees or certificates for other positions. (*Id*. ¶ 8, ¶ 16). Thus, AHS offered Plaintiff the Clinic Assistant position at AHS's Peabody location. (*Id*. ¶ 6).

One of the most important duties assigned to Clinic Assistants is covering the front desk on occasion. (*Id*. ¶ 7). It is the first job responsibility listed on the job description (Pl.'s Exh. 9, filed at D.E. #28-2, at PageID 288),[2] and every Clinic Assistant at AHS' facilities must perform this key role, (Grant Aff. ¶ 7). At the Peabody location, AHS employed two full-time

---

[2] Specifically, the job description reads as follows:

1st THING – IS THE FRONT DESK AND GUARD STAFFED

LEARN FRONT DESK ROLE SO YOU CAN FILL IN IF NECESSARY FOR LUNCH, NO SHOWS AND BREAKS; BREAK TIME WILL BE 10 AND 10:15 AND 2 AND 2:15; LUNCH TIMES FOR FRONT DESK IS 12 AND 12:30.

(Pl.'s Exh. 9, filed at D.E. #28-2, at PageID 88).

receptionists.  (*Id.*)  Only when one of these two individuals is absent from work is the Clinic Assistant required to cover the front desk for brief breaks such as restroom or lunch breaks.  (*Id.*)  While the Clinic Assistant would only fill this role on infrequent occasions, it is nonetheless vital to the operation of the clinic for someone to be at the receptionist desk whenever the clinic is open.  (*Id.*)  Although the Clinic Assistant position typically received lower pay than Plaintiff's Administrative Assistant position, AHS offered Plaintiff the position at the same rate of pay as she had previously been earning as an Administrative Assistant.  (*Id.* ¶ 6).  Had Plaintiff accepted the Clinic Assistant position, she would have been the highest paid Clinic Assistant at AHS.  (*Id.*)

### b.  *Plaintiff's Mental Health Treatment*

Plaintiff had not been undergoing any treatment from a mental health professional for at least two decades before 2020.  (Plaintiff's Deposition ("Pl.'s Dep.") at 42:8-43:22, 45:18-25).[3]  Throughout her employment with AHS, she was able to perform day-to-day tasks such as bathing herself, clothing herself, feeding herself, taking care of her home, and having a relationship with her spouse.  (Pl.'s Dep. at 92:8-22).  Plaintiff did take occasional sick days for her anxiety, but she did not discuss the reason for the sick days with AHS and did not have any overall attendance issues during her employment with AHS.  (Pl.'s Dep. at 83:3-84:17).  For these reasons, AHS had never regarded Plaintiff as disabled, and it was unaware that Plaintiff suffered from anxiety when she was offered the position of Clinic Assistant in June 2020.  (Grant Aff. ¶¶ 10-11).

When Plaintiff was notified that her Administrative Assistant position was being

---

[3]  Plaintiff does not dispute this paragraph of AHS's Statement of Undisputed Material Fact for purposes of summary judgment (*see* D.E. #28-2 at PageID 140-141, ¶ 80); however, *supra*, Plaintiff relies upon a letter from her internal medicine physician, Dr. Mahfuzur Rahman, M.D., stating that he had treated her for anxiety for "several years." (Pl.'s Exh. 7, filed at D.E. #27-2, at PageID 286).

eliminated and that she was being offered the position of Clinic Assistant, she was provided with the new job description.  (Pl.'s Exh. 5A, filed at D.E. 28-2 at PageID 257; Exh. 9, filed at D.E. #28-2 at PageID 288-89).  She subsequently informed AHS that she could not work the front desk due to anxiety.  (*Id.*)  AHS believed that "something could be worked out for that."  (*Id.*)

On July 9, 2020, Plaintiff received a letter from AHS giving her until July 13, 2020 to decide whether or not she accepted the position of Clinic Assistant.  (Plaintiff's Exh. 12, filed at D.E. #28-2 at PageID 292-93).  On July 12, Plaintiff accepted the position of Clinic Assistant "with accommodation."  (Pl's. Exh. 8, filed at D.E. #28-2 at PageID 287).  Plaintiff's acceptance letter was accompanied by a hand-written statement from an internal medicine physician, Dr. Mahfusur Rahman, M.D., which was dated July 10, 2020.  (Pl.'s Exh. 7, filed at D.E. #28-2, at PageID 286).  Therein, Dr. Rahman stated that Plaintiff had been a patient of his for several years, including for treatment of anxiety, and that she had expressed concern to him that her recent job offer would aggravate her symptoms.  (*Id.*)  Dr. Rahman expressed in his letter that he felt that "any other position which is less anxiety producing will be beneficial to her." (*Id.*)  Internals emails demonstrate that leadership at AHS discussed Plaintiff's proposed accommodation and determined that it could not eliminate the requirement of front desk coverage from the Clinic Assistant position.   (Pl.'s Exh. 6, filed at D.E. #28-2, at PageID 280-85).

In early July or late August of 2020, Plaintiff visited Dr. Seay, a psychiatrist.  (Plaintiff's Deposition ("Pl.'s Dep.") at 15:9-17).  On August 3, 2020, Dr. Seay prepared a letter to AHS documenting his treatment of Plaintiff's anxiety, panic, trauma and post-traumatic stress disorder. (Pl.'s Exhs. 3-4, filed at D.E. #28-2, PageID 206-210).  He states that she has suffered with certain symptoms since her childhood years but that she has never received appropriate professional

6

treatment. (*Id.*) In addition, Dr. Seay explained that Plaintiff was threatened by a male patient many years ago and that she becomes fearful when interacting with the general public, particularly because she does not want to come into contact with "angry patients and angry family members of patients" who verbally abuse front-desk staff. (*Id.*) Dr. Seay opined what, while it may seem exaggerated or unreasonable to some who do not suffer from anxiety, Plaintiff would be best suited for employment with AHS with a reasonable accommodation for her symptoms. (*Id.*)

Plaintiff saw Dr. Seay a second time on September 1, 2020. (Pl.'s Dep. at 15:18-22). From that time until her August 23, 2023 deposition, Plaintiff had not seen a mental health professional on any other occasions. (Pl.'s Dep. at 15:23-16:3).

### c. *Plaintiff's Requested Accommodation*

Based upon Dr. Seay and Dr. Rahman's advice, Plaintiff continued to request that she be excused from the Clinic Assistant's responsibility of covering the receptionist. (Grant Aff. ¶ 12). Brenda Grant with AHS deems this requirement as "essential (albeit occasional)." (*Id.*) Plaintiff disputes that the function is essential by relying upon AHS's organizational chart from 2019 until 2023, which she asserts reflects that there are a number of front-desk staff members at the five locations without even considering the number of other clerical staff.[4] (Pl.'s Exhibit 15,

---

[4] Plaintiff asserts that the exhibit demonstrates that there are twenty-four front-desk staff members at the five locations. The Court's review of Plaintiff's Exhibit 15 reflects that thirty individuals are listed as having a "Front Desk" position. (Pl.'s Exhibit 15, filed at D.E. #28-2, at PageID 312-313). Of those thirty, eighteen individuals whose positions are listed as "Front Desk" on this chart show their status as being either "Terminated," "Resigned," or "Retired." (*Id.*) Twelve are listed as "Active" employees. (*Id.*) Additionally, Plaintiff's Exhibit 6 shows that there were only two front desk staff at the Peabody location, (Pl.'s Exh. 6, filed at D.E. #28-2, PageID 284), which is consistent with Grant's Affidavit and her explanation that Clinic Assistants would be needed to cover the front desk only when "one of these two . . . individuals is absent from work" and the other takes "brief breaks such as restroom or lunch breaks," (*see* Grant Aff. ¶ 7).

filed at D.E. #28-2, at PageID 312-313).    Plaintiff additionally disputes that it would have been essential for her to cover the front desk when, in 2021, additional Intake Assistants were hired and have, on occasion, covered the front desk at some of the clinics.    (Pl.'s Exhibit 19, filed at D.E. #28-2, at PageID 330).

Brenda Grant and Susan Bell from AHS met with Plaintiff on more than one occasion to discuss Plaintiff's issues with this requirement and possible solutions.    (Grant Aff. ¶ 13). Plaintiff does not directly dispute this fact but questions why there was no further evidence of these meetings.    (*See* Pl.'s Exh. 5 at PageID 211-256; Exh. 19 at PageID 332-33, ¶ 10, ¶ 12; Exh. 20 at PageID 340, 342 ¶ 1, ¶ 12).    She also relies upon her Administrative Support Supervisor job description from 2016, which lists her as having the responsibility to coordinate operational matters and front-desk operations, as evidence that she had relevant experience to propose alternate solutions.    (Pl,'s Exh. 5d, PageID 278-279).

Ultimately, AHS determined that there was no feasible way to remove this duty from the Clinic Assistant position at the Peabody location without incurring significant burden and expense. (*Id*.)    AHS believed that, as a practical matter, there was no way to predict when the Peabody receptionists would need a break or back-up coverage.    (Grant Aff. ¶ 15).    Thus, other than the receptionists and the Clinic Assistants, no other employees at the Peabody location could reasonably leave their clinical positions to cover the receptionist desk.    (*Id*.)    AHS stated that it was not feasible to hire another employee whose sole purpose would be to provide back-up coverage for the receptionist desk when, on occasion and in rare circumstances, neither of the full-time receptionists were available.    (*Id*.)

### III. Proposed Analysis and Conclusions of Law

#### a. *Plaintiff's Cross-Motion for Summary Judgment and Plaintiff's Motion for Leave to File Response as Cross-Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment*

Plaintiff argues that this Court should permit her untimely Cross-Motion for Summary Judgment because she did not believe her motion was necessary for her case until after the dispositive motion deadline passed. The Court's Scheduling Order, however, requires a party to file a dispositive motion no later than a certain date regardless of the party's belief as to whether it would be successful or prudent.

Pursuant to Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure, the Court may only extend this deadline "if the party failed to act because of excusable neglect." The Rule 6(b) excusable neglect standard requires the court to consider five factors: (1) the danger of prejudice to the non-moving party, (2) the length of the delay and its impact on the case, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the moving party acted in good faith despite the delay. *Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 522 (6th Cir. 2006). Here, Plaintiff has failed to demonstrate why her delay constitutes excusable neglect. Accordingly, it is RECOMMENDED that Plaintiff's Cross-Motion for Summary Judgment is DENIED as untimely and that Plaintiff's Motion for Leave to File Response as Cross-Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment be DENIED.

#### b. *Plaintiff's Motion for Leave to File Out of Time*

Plaintiff's Motion for Leave to File Out of Time argues that her failure to respond to AHS's Motion for Summary Judgment was due to excusable neglect. Pursuant to Rule 6(a) of the

9

Federal Rules of Civil Procedure and Local Rule 56.1(b), Plaintiff's Response was due on Monday, November 27, 2023.[5] Plaintiff explains that she contacted the Clerk's Office on that date to confirm when she could file her Response, that she followed their instructions, that she came to the courthouse in an attempt to do so, and that she found the building locked and the "dropbox inaccessible." Thus, she filed her Response on the following day. The Court finds that Plaintiff's explanation for filing her Response one day late constitutes excuasable neglect. Accordingly, Plaintiff's Motion for Leave to File Out of Time is hereby GRANTED, and her Response will be considered for purposes of the Report and Recommendation on AHS's Motion for Summary Judgment.

### c. AHS's Motion for Summary Judgment

#### i. Rule 56 of the Federal Rules of Civil Procedure

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on

---

[5] Plaintiff's Response would have been due on Thursday, November 23, 2023; however, that was Thanksgiving Day, a legal holiday, which extends the deadline to the following day. *See* Fed. R. Civ. P. 6(a)(1)(C). This Court's Clerk's Office was closed on the following day (Friday, November 23, 2023), and, thus, the deadline was extended until the next accessible day that was not a Saturday, Sunday, or legal holiday. *See* Fed. R. Civ. P. 6(a)(3)(A).

facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id*. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### ii. ADA Failure to Accommodate

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual." *See* 42 U.S.C. §

12111(a). The term "discriminate" is defined to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id*. § 12112(b)(5)(A).

To be "qualified" under the ADA, the employee must be able to perform the essential functions of the job. *EEOC v. Ford Motor Co.*, 782 F.3d 753, 761 (6th Cir. 2015). "Essential functions generally are those that the employer's judgment and written job description prior to litigation deem essential." *Id*. at 761-62 (citing 42 U.S.C. 12111(8) and EEOC regulations). Likewise, if a proposed accommodation would eliminate an essential function, it is necessarily unreasonable. *Id*. at 763. The employee bears the burden of proposing an accommodation that will permit her to effectively perform the essential functions of her job. *Id*. (citing *Jakubowski v. Christ Hosp., Inc.*, 627 F3d. 195, 202 (6th Cir. 2010)).

Here, it is undisputed that AHS deemed front desk coverage to be essential for the Clinic Assistant role. It is the first item listed on the daily job description for Clinic Assistants, and AHS determined that there was no other feasible way to ensure that the front desk was manned when its assigned staff took breaks, took lunch, or were absent from work other than require its Clinic Assistants to perform this task. There is no evidence in the record that Plaintiff proposed any accommodation other than the elimination of this essential function, which an employer is not required to do to comply with the ADA. Plaintiff bears the burden to prove that she proposed such an accommodation, and she has failed to do so here. Accordingly, it is RECOMMENDED

that AHS's Motion for Summary Judgment be GRANTED.[6]

## IV. Conclusion

For the reasons set forth herein, it is RECOMMENDED that AHS's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED as untimely. It is further recommended that Plaintiff's Motion for Leave to File Cross-Motion be DENIED and that Plaintiff's Motion for Leave to File Response be GRANTED.

**SIGNED** this 22nd day of April, 2024.

                                                s/ Charmiane G. Claxton
                                                CHARMIANE G. CLAXTON
                                                UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER AND/OR FORFEITURE OF THE OPPORTUNITY TO RAISE OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL**

---

[6] The parties also dispute whether Plaintiff is disabled under the ADA. While AHS contends that Plaintiff is not disabled, Plaintiff has brought forth evidence, including two doctors' statements, that she suffers from anxiety and that potentially distressing interactions with the general public exacerbate her symptoms. The Court need not address this question, however, as, even if Plaintiff establishes that she was disabled under the ADA, an employer is not required to eliminate an essential job function to accommodate an employee's disability.